Samuel S. SMUCKER, Hannah B. Smucker and William H. McMichael, Appellants

v.

LANCASTER CITY PLANNING COMMISSION.

Commonwealth Court of Pennsylvania.

Argued June 17, 2013.

Decided Aug. 2, 2013.

Lee A. Stivale, Springfield, for appellants.

Melvin H. Hess, Lancaster, for appellee.

BEFORE: LEAVITT, Judge, COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Samuel S. Smucker, Hannah B. Smucker and William H. McMichael (Property

Owners)[1] appeal an order of the Lancaster County Court of Common Pleas (trial court) certifying Property Owners' vacant property as blighted and authorizing the City's Redevelopment Authority to file a declaration of taking. Property Owners argue that the City did not prove the property was blighted because it did not first establish that the property was vacant. Discerning no error, we affirm.

Property Owners own property located at 528 East King Street in Lancaster. The property is a brick row home that is divided into three residential units. On June 2, 2010, the Lancaster Property Reinvestment Board evaluated the property as "vacant" and blighted, noting unattended scaffolding in the rear yard and an electric meter that had been "red tagged" by the utility company. Reproduced Record at 44a–45a (R.R. ——). The Board's evaluation was referred to the Lancaster City Planning Commission, which conducted a hearing on August 18, 2010.

At the hearing, McMichael claimed the property was not blighted because it was not vacant. McMichael testified that a tenant resided in the building who paid for his occupancy by doing maintenance work on the property. McMichael also claimed that the tenant had changed the locks, which prevented McMichael from entering the building. McMichael was unable to produce a written lease agreement with this tenant. His sole evidence of occupancy consisted of several electrical service bills, which McMichael had paid. The City Planning Commission determined that the property was blighted under Section 12.1(e) of the Urban Redevelopment Law[2] and Chapter 22, Section 40.H of the Code

of the City of Lancaster (Lancaster Code)[3] because it was vacant and because building code violations from 2008 had not been corrected.

On September 16, 2010, Property Owners appealed the determination of blight, and the trial court conducted a hearing on July 30, 2012. At the hearing, Property Owners reiterated that the only issue they were raising was whether or not the property was vacant.

In support of its claim that the property was vacant, the City presented the testimony of Randy Patterson, its director of economic development and neighborhood revitalization. Patterson manages the code enforcement program for the City. He testified that the City had notified Property Owners of 13 repairs that had to be made to bring the property up to code. This notification was sent on July 9, 2008. Property Owners never procured a building permit, which was necessary to do the repairs, nor did they make the required repairs even without a permit.

Patterson testified that the City scheduled numerous inspections of the property but on each occasion McMichael would either ask to reschedule the inspection or fail to appear on the scheduled date. As a result, City inspectors have not been able to gain entry to the property.

Patterson testified that he and other City officials repeatedly asked McMichael to provide a lease agreement to confirm that the property was, in fact, occupied. McMichael never did so. Patterson also testified that if Property Owners were using the property as a rental property, they

---

1. While the appeal purports to be from all three owners of the property, McMichael appears to be the sole participant at all stages of the proceedings.

2. Act of May 24, 1945, P.L. 991, *as amended,* 35 P.S. §§ 1701–1719.2. Section 12.1 was added by Section 2 of the Act of June 23, 1978, P.L. 556, *as amended,* 35 P.S. § 1712.1.

3. Lancaster Code, Article X, § 22–40.H.

had to obtain a license and designate a responsible agent. The most recent rental license for the property, issued sometime in 2010, had expired; no responsible agent had ever been designated.

The City also presented the testimony of McMichael, as on cross-examination. McMichael testified that the property is held in trust.[4] He is the sole beneficiary and the trustees live in Florida. McMichael testified that Sydney Moyer has occupied one of the apartments in the property since 2008 and does maintenance work in lieu of rent pursuant to an oral agreement. McMichael stated that he has driven by the property and observed that chores, such as snow removal and grass cutting, had been completed. McMichael did not remember the last time he filed a tax return, stating his records had been lost. In any case, he acknowledged that he has not ever filed a tax return that reported rental income from Moyer.

McMichael acknowledged that he never identified Moyer as the tenant in response to Patterson's inquiries. Instead, McMichael told Patterson that "Agent Josh" resided there. R.R. 28a.[5] McMichael testified that "Agent Josh" is his nickname for Moyer. *Id.* According to McMichael, Moyer has not permitted him to access the building "for some time." R.R. 20a–21a. In order to serve Moyer with a subpoena to appear at depositions, McMichael did not attempt to speak with Moyer or knock on the door of the residence. Instead, he put the subpoena "[t]hrough the mail slot." R.R. 21a. McMichael testified that he has paid the electric bills for the property since 2011 and provided copies of four electric bills, all from 2012.[6]

Moyer was called to testify. However, he refused to swear or affirm that he would testify truthfully, claiming that it was against his religious convictions. The trial judge dismissed Moyer from the stand. McMichael did not object to the removal of his witness and presented no further testimony.

The trial court found that the City presented sufficient evidence that the property was vacant. The trial court credited Patterson's testimony that McMichael was never able to produce a written lease or rental license for the property. The trial court rejected as not credible McMichael's testimony that Moyer occupied one of the apartments and did maintenance in lieu of rent. Notably, McMichael did not testify that any actual work was done on the building by anyone, only that Moyer had removed snow and mowed the lawn at unspecified times. The trial court found that the electric bills McMichael presented from 2012 provided no indication of actual electric usage at the property.[7] The present appeal followed.

■ Property Owners raise two issues

---

4. The deed designating 528 East King Street Land Trust as the grantee was introduced at trial as Exhibit C3. The deed was officially recorded on November 22, 2010.

5. The Reproduced Record omits five pages of the notes of testimony before the trial court; pages 10–14 of the transcript are contained in the Certified Record.

6. The determination of blight was made in 2010. Before the trial court, McMichael claimed to have paid the electric bills since 2011, but only provided bills from 2012. The City Planning Commission's minutes from 2010 indicate that McMichael had claimed to be paying the electric bills at that time. McMichael never presented bills from 2010 to the trial court.

7. The 2012 electric bills were irrelevant to the City's determination that the property was blighted in 2010. McMichael did not present any bills to show the property was occupied in 2010.

for this Court's review.[8] Property Owners first argue that the City failed to present sufficient evidence that the Property was vacant. Second, Property Owners contend that the trial court's conclusion that the property was vacant is contrary to the evidence of record and is in capricious disregard of the evidence.

We begin with the applicable law. Section 12.1(e)(1)(i) of the Urban Redevelopment Law provides, in relevant part, as follows:

> (1) No property shall be certified to the Redevelopment Authority unless it is vacant. A property shall be considered vacant if:
>
>> (i) the property is unoccupied or its occupancy has not been authorized by the owner of the property[.]

35 P.S. § 1712.1(e)(1)(i). Chapter 22, Section 40.H of the Lancaster Code provides, in relevant part, that:

> Blighted property shall include the following:
>
> * * *
>
> H. A property which is vacant but not tax delinquent and which has not been rehabilitated within one year of the receipt of notice to rehabilitate from the appropriate enforcement agency.

LANCASTER CODE, ARTICLE X, § 22–40.H.

The Lancaster Code contains several other relevant provisions. Chapter 238, Section 9 states that rental property may not "be occupied unless [the owner] has first registered the property with the Code Official and obtained a license. It shall be the duty of the owner or responsible agent to notify the Code Official whenever any unit becomes occupied." LANCASTER CODE, ARTICLE I, § 238–9.A. An "occupant" is defined as "[a]ny person over one year of age living and sleeping in a residential rental unit or having actual possession of such residential rental unit." LANCASTER CODE, ARTICLE I, § 238–1. A "residential rental unit" is defined as a dwelling "occupied by any persons other than are occupied solely by the owner and members of the owner's family." *Id.* Additionally, the City must be provided "with written notice that a unit is occupied" and "upon request of the Code Enforcement Officer, [the owner must provide] a written rental agreement for each unit which shall include the names of all permitted occupants." LANCASTER CODE, ARTICLE I, § 238–2.A(7) and (11).

■ Property Owners first argue that the City failed to prove that the property was vacant. They contend that the lack of a written lease agreement or designated responsible agent may prove a violation of law but not a vacancy. Property Owners argue that because City officials never gained access to the property, they had no knowledge of what was going on inside. Property Owners also contend that the property had been licensed as a rental property.

We agree with the trial court that the City's evidence was sufficient to prove the property was vacant. Patterson testified credibly that McMichael refused numerous requests to document occupancy with a lease and the home address of the agent responsible for maintenance. Instead, McMichael informed Patterson that "Agent Josh" lived there and shoveled snow and mowed the lawn at unspecified times. Further, McMichael refused to allow the City to inspect the inside of the property. The trial court rejected McMichael's testimony that "Agent Josh" lived

---

**8.** This Court's scope of review is limited to whether the trial court abused its discretion or committed an error of law. *Redevelopment Authority of the City of York v. Bratic,* 45 A.3d 1168, 1173 (Pa.Cmwlth.2012).

in the property and had changed the locks so that Property Owners could not admit City officials to do an inspection. Property Owners describe McMichael's testimony as uncontroverted; in actuality, it was uncorroborated since Moyer refused to testify. In short, the trial court did not err in finding, based on the City's evidence, that the property was vacant.

 Property Owners next argue that the trial court artificially restricted the scope of its evidentiary inquiry to the non-production of a written lease and the fact that the property was not currently licensed as a rental property and, thus, capriciously disregarded McMichael's testimony. The City responds that the trial court did not limit the scope of its inquiry or ignore McMichael's testimony. The trial court did note that the property was not currently licensed as a rental property and that McMichael refused to produce a lease. However, the trial court also specifically addressed McMichael's refusal to allow City inspectors to enter the property; McMichael's identification of the alleged occupant only as "Agent Josh;" McMichael's claim that Agent Josh is his nickname for Moyer; McMichael's vague testimony regarding maintenance work performed by Moyer; McMichael's claims that Moyer was preventing him from accessing the property; and Moyer's refusal to swear to testify truthfully at trial.

In short, the trial court did not unduly restrict the scope of its evidentiary inquiry or capriciously disregard evidence. The trial court considered and addressed all the evidence of record in reaching its conclusion.[9] That the trial court accorded greater weight to the City's evidence was within its discretion and outside the scope of this Court's appellate review.

For all of these reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 2nd day of August, 2013, the order of the Court of Common Pleas of Lancaster County dated August 2, 2012, in the above-captioned matter is hereby AFFIRMED.

---

9. Additionally, Property Owners complain that the trial court abused its discretion by dismissing Moyer from the witness stand even though he was trying to testify truthfully. Notably, McMichael raised no objection when the trial court dismissed Moyer, therefore this claim is waived. Further, Property Owners provide no supporting argument or case law to this Court to show the trial court acted improperly under the circumstances.